1

2

3

4

5

6

7

8

9

THE HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COALVIEW CENTRALIA, LLC,
a Delaware limited liability company,

                              Plaintiff,

    v.

TRANSALTA CENTRALIA MINING LLC,
a Washington limited liability company, and
TRANSALTA CORPORATION, a Canadian
corporation,

                           Defendants.

NO. 3:18-cv-05639

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL
DISCOVERY RESPONSES

NOTE ON MOTION CALENDAR:

JULY 12, 2019

ORAL ARGUMENT REQUESTED

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

COALVIEW CENTRALIA, LLC ("**Coalview**") files this Opposition to TRANSALTA CENTRALIA MINING LLC's ("**TCM**") Motion to Compel Discovery Responses (D.E. 145, the "**Second Motion to Compel**"), and respectfully requests that TCM's Second Motion to Compel be denied.

I.    **Introduction**

TCM has already sought and failed in its first Motion to Compel Discovery Responses (D.E. 97, the "**First Motion to Compel**"), to compel unbounded, irrelevant financial discovery that it again seeks in its now-pending Second Motion to Compel. Indeed, the Court hit the nail on the head during the May 9, 2019 hearing with its observations regarding TCM's improper attempt to seek irrelevant financial information:

> THE COURT: It is tangentially involved here, because in the motion to compel they want financial information and everything else. From my vantage point, and what was presented, it looked like it was a made up crisis.
>
> * * *
>
> THE COURT: I am not disparaging anyone. From my perspective, reading this stuff, it looked like a contrived gotcha.

D.E. 125 (5/9/19 Hearing Transcript) at 6:3-11. Because Coalview's finances were completely unrelated to the parties' dispute over invoices, the Court denied TCM's First Motion to Compel. D.E. 123 and 124 (Minute Orders reflecting denial of TCM's First Motion to Compel).

Undeterred, TCM continues its "contrived gotcha" tactics to weasel out of the contracts to which it agreed by again claiming that the parties' agreements are terminated, this time arguing that Coalview is in default because it was purportedly insolvent as of December 31, 2018.  As a result of this latest declaration of default, Coalview was required to amend its Complaint to seek protection from TCM's improper declaration of default and claimed

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

1    termination of the parties' contracts. TCM's latest attempt to terminate the parties' agreements

2    is improper because, as the Court already determined in its Injunction Order, the unambiguous

3    language of the Master Services Agreement (the "**MSA**") prohibits TCM's attempted

4    termination pending this dispute. *See* D.E. 34 ("TCM agreed to that "notwithstanding any

5    Disputes" the parties "shall diligently proceed with performance of [the MSA]") (citing MSA,

6    ¶12.04).

7

8    While TCM's most recent declaration of purported default and termination has forced

9    Coalview to put its solvency at issue in its Amended Counterclaim in order to contest TCM's

10   attempt to put Coalview out of business, this does not open up "Pandora's Box" to permit TCM

11   unfettered access to all of Coalview's finances and all related documents for all time as it is

12   requesting. Indeed, this litigation remains a simple contractual dispute over Coalview's

13   invoices. The Court should see TCM's actions for what they are and put an end to TCM's

14   constant quest to find or invent (through improper discovery or otherwise) a loophole to escape

15   its obligations under the contracts. Additionally, as set forth below, TCM should be held to the

16   agreement it made regarding the schedule of document production.

17

18   Contrary to TCM's claim in its Second Motion to Compel, "Coalview's Amended

19   Complaint [does not] moot any previous objection that its finances are not relevant." Second

20   Motion to Compel, D.E. 145 at 3. TCM's discovery aimed at Coalview's finances remains as

21   objectionable now as it was at the May 9, 2019 hearing. Indeed, TCM seeks unrestricted access

22   to Coalview's books and financial records regardless of relevance to the solvency dispute, and

23   despite purportedly already possessing all of the information required to have declared

24   Coalview insolvent. Accordingly, the Court should again deny TCM's improper attempt to seek

25

26

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

wide-ranging irrelevant financial and other discovery that lacks relevance to any party's claim or defense, and is not proportional.

## II. This Second Motion to Compel Should Also be Denied as TCM Once Again Seeks Overbroad, Irrelevant Financial Information[1]

Coalview's financial condition was in no way relevant to the parties' dispute when TCM first sought its unbounded discovery regarding Coalview's finances. Indeed, TCM already sought to compel the same information it now seeks and the Court denied TCM's First Motion to Compel, calling it "a made up crisis." D.E. 125 (5/9/19 Hearing Transcript) at 6:3-11; D.E. 123 and 124. Although TCM apparently acknowledges that it was not previously entitled to this financial information, it now incorrectly argues that "Coalview's amended complaint moots any previous objection that its finances are not relevant." D.E. 145 at 3. However, the wide-ranging financial information that TCM seeks remains just as objectionable as when the Court denied the First Motion to Compel. Indeed, Coalview's Amended Complaint does not permit TCM unfettered access to financial information wholly unrelated to TCM's claim of insolvency.

The basis of TCM's current claimed declaration of default is Coalview's financial condition as it existed at the end of the "fiscal quarter ending December 31, 2018". D.E. 135-4 (Amended Complaint), Ex. D (March 29, 2019 letter from TCM declaring default and termination for purported insolvency) (the "**March 29 Termination Letter**").   TCM relied on this narrow delineated timeframe to declare a default and termination of the MSA. *Id.*[2] Coalview has demanded that TCM withdraw its position that the agreements have been

---

[1] This Opposition was fully briefed prior to the Court's Order, D.E. 151.

[2] TCM brought the March 29 Termination Letter, among other correspondence, to the Court's attention during the May 9, 2019 hearing, yet the Court still denied TCM's First Motion to Compel.

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

terminated, including the MSA, as determined by the Court, requires TCM to continue to perform notwithstanding a claim of default. *See* D.E. 34 ("TCM agreed to that "notwithstanding any Disputes" the parties "shall diligently proceed with performance of [the MSA]") (citing MSA, ¶12.04). TCM refused and on June 7, 2019 Coalview was forced to file its Amended Complaint, seeking, *inter alia*, injunctive relief under Section 12.04 of the MSA for TCM's latest improper attempt to terminate the MSA. D.E. 135.

By TCM's own position, it has only forced Coalview to put its solvency at issue for a discrete and limited period of time relating to the last quarter of 2018. Thus, TCM's implication that Coalview has not properly or timely responded to discovery is wholly misplaced because the issue only recently became ripe, at the earliest, in June when Coalview filed its Amended Complaint. *See, e.g.*, D.E. 145 ("It has now been over six months since TransAlta propounded its request for financial discovery"). But in reality, the issue is not yet ripe for the Court's consideration as TCM acknowledges that it did not discharge its meet and confer obligations prior to filing the Second Motion to Compel. *See* D.E. 147 (Declaration of Miles Yanick in Support of Second Motion to Compel), Ex. C (June 27, 2019 letter from TCM's counsel requesting meet and confer regarding "Requests for Production 1, **20, 21,** 23, 29, 30 and Interrogatory 4") (emphasis added). However, Requests for Production Numbers 20 and 21 seek the exact same information that TCM is now seeking to compel in its Second Motion to Compel:

> **REQUEST FOR PRODUCTION NO. 20:** All financial statements covering the period of January 1, 2018 to the present, including any audited or reviewed annual statements and all profit-and-loss statements, balance sheets, AR reports, and AP reports.

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

**REQUEST FOR PRODUCTION NO. 21:** All documents identifying, referring to, or otherwise relating to any debts or other financial obligations of Coalview that were not paid when due—even if they have since been paid—at any time from January 1, 2018 to the present.

*See* D.E. 98 (Declaration of Sarah Gohmann Bigelow), Ex. B (Coalview's Responses to TCM's First Request for Production).[3] Thus, the Second Motion to Compel should be denied as premature.[4]

Moreover, not only is TCM's latest claim of default still "contrived", but TCM also still seeks to compel overbroad financial information completely unrelated to that claim of default. For example, TCM seeks to compel all financial statements from January 1, 2018 to the present and "documents sufficient to show *all of Coalview's debts or other financial obligations due between January 1, 2018 and the present* that (a) are currently unpaid or (b) were not paid when due, *even if since paid*.*" D.E. 145 at 3, n.2 and 5 (emphasis added). TCM's requests remain patently overbroad and not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden or expense of the proposed discovery. For instance, TCM's request for financial information prior to the fourth quarter of 2018 and after TCM's March 29 Termination Letter are not relevant to the claimed default by TCM. Nor are TCM's requests relevant or proportional with respect to documents evidencing "*all* debts or other financial

---

[3] Moreover, TCM served additional discovery in June 2019 directed at the allegations in Coalview's Amended Complaint. TCM has only itself to blame for drafting, and refusing to properly limit, overbroad discovery seeking irrelevant information and failing to timely produce its own documents. *See infra* regarding the production schedule agreement.

[4] Coalview further objects to TCM seeking additional relief regarding the same discovery requests on a piecemeal basis. The meet and confer requirements serve to help eliminate the unnecessary waste of judicial resources. In short, TCM should only get one "bite at the apple."

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

obligations" and debts since paid. Indeed, TCM essentially seeks a full accounting of every dollar spent by Coalview over the past year and a half, despite the time period and subject matter not being relevant to TCM's claim of default. By way of example, whether Coalview was late paying a vendor has no relevance to TCM's purported claim of insolvency. Nor is requiring Coalview to review every invoice or bill and undergo such an unnecessary exercise proportional to the needs to the case or otherwise proper under Rule 26. Thus, TCM wrongfully argues that "Coalview's amended complaint moots any previous objection that its finances are not relevant." D.E. 145 at 3.[5] TCM's claim of insolvency does not permit TCM unfettered access to all of Coalview's finances, books, and records, or for an unrelated period of time. Instead, to the extent TCM is entitled to any financial documents – which TCM should not be as it is already in possession of the documents it deemed necessary to claim a default, *see infra* – production must be limited to the period of time and scope of TCM's claim of default.[6]

Indeed, TCM declared Coalview insolvent as of December 31, 2019 based on information it had in its possession and/or which is publicly available. D.E. 135-4, Ex. D. Thus, TCM possessed the documents it deemed necessary to declare a default. Accordingly, TCM's reliance on *Shatsky v. Syrian Arab Republic,* 312 F.R.D. 219, 223 (D.D.C. 2015) is misplaced. In *Shatsky,* the plaintiff objected to producing material because it was publicly available and "equally accessible to defendants." *Id.* Here, TCM not only seeks documents unrelated to the applicable period of time and subject matter at issue, but TCM admittedly already has all of the

---

[5] TCM's position, therefore, that Coalview withdraw its objections by 5:00 p.m. Pacific Time on June 27, 2019—the same day that TCM's counsel sent the letter making that demand – was unfounded. D.E. 147, ¶4.  Nor was the demanded time frame reasonable as the letter was sent at 2:46 p.m. EST that same day.

[6] It is well-settled that discovery may not be used as a "fishing expedition to discover additional instances of wrongdoing beyond those already alleged." *Tottenham v. Trans World Gaming Corp.,* 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002).

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington   98101-2939*
*206 464 3939*

information that is publicly available, as well as all of the information that TCM needed to declare a default. TCM is therefore not required to "scour the public domain" as warned against in *Shatsky*. *Id.* TCM should not be permitted to seek additional, unnecessary, or irrelevant information.

In any event, TCM's true intent, as further demonstrated in the Second Motion to Compel, has consistently been revealed throughout this lawsuit, and even recognized by the Court when it entered the Injunction Order:

> It is not surprising that a major, long-term environmental clean-up turned out to be more involved, slower, bigger, and more expensive than the parties thought it would be when they started. That is often, if not typically, the case. Coalview points out (and TCM implicitly concedes) that the contracts imposed those risks on TCM.

D.E. 34 at 8. It is no secret that TCM no longer wishes to honor its agreements because it believes the agreements to no longer be financially beneficial. Despite any gripe TCM may have with the deal it made, the discovery process is not a means for TCM to hunt for new claims that it can invent to attempt to back out of the agreements. *Tottenham*, 2002 WL 1967023, at *2. While TCM may have managed to inject the limited scope of Coalview's solvency into this purely contractual dispute about invoices, it should not be overlooked that this dispute arose out of TCM's failure to pay Coalview for work performed and its improper attempt to terminate the parties' agreements. The Injunction Order required TCM to pay Coalview its outstanding invoices, continue to pay for work going forward, and to continue to proceed under the parties' agreements. D.E. 34. Now, TCM refuses to abide by the Injunction Order and again claims the agreements are terminated. To compound this, there is an ongoing MSHA investigation that has prevented Coalview from continuing to work. Undoubtedly,

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

TCM's initial refusal to pay Coalview for work performed (without being required by the Court's Injunction Order), and MHSA now preventing Coalview from performing work, have not helped the parties "get back to work", as the Court stated it was inclined to order during the May 9, 2019 hearing. D.E. 125 at 9:2-8. Coalview submits that "getting back to work" is exactly what Section 12.04 of the MSA requires, and that ordering TCM to abide by the agreements as soon as the MHSA investigation is completed will permit the parties to litigate the actual contractual disputes that remain, rather than TCM's "contrived" discovery disputes.

Accordingly, the Second Motion to Compel should be denied, or at the very least, any production limited to the relevant time frame and proper scope relating to TCM's claim of default for insolvency.

### III.     Agreement Between Counsel Regarding Production Schedule

On February 6, 2019, the parties held a meet and confer, during which TCM agreed that Coalview did not have to produce documents prior to TCM's production because Coalview served its discovery first (the "**Production Schedule Agreement**") and TCM had failed to produce any documents at the time. The Production Schedule Agreement was memorialized in Coalview's Responses to TCM's First Request for Production served on February 26, 2019. *See* D.E. 98 (Declaration of Sarah Gohmann Bigelow in Support of TCM's First Motion to Compel), Ex. B (Coalview's Responses to TCM's First Request for Production), n.1 ("Pursuant to Rule 34(b)(2)(B), Coalview *will seasonably produce responsive documents after TransAlta concludes its production of documents* pursuant to the agreement reached during a meet and confer conference with TransAlta's counsel") (emphasis added).[7] Following Coalview serving

---

[7] The Production Schedule Agreement was also re-stated in Coalview's Responses to TCM's Second Request for Production. D.E. 98, Ex. C.

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

its discovery responses, TCM wrote several emails and letters regarding the purported deficiencies in Coalview's discovery responses, the parties held several discovery meet and confer conferences, including one on March 11, 2019 regarding "Coalview's responses and objections to TransAlta's discovery requests" D.E. 98, ¶6, and, ultimately, TCM filed its First Motion to Compel regarding Coalview's discovery responses. Despite devoting numerous hours discussing, corresponding about, and litigating over. Coalview's discovery responses, TCM never filed a motion to strike or to compel with respect to the Production Schedule Agreement, nor sent any contemporaneous correspondence objecting to the Production Schedule Agreement.

Indeed, on March 4 and March 13, 2019, TCM filed two Declarations of Sarah Gohmann Bigelow (D.E. 95 and 98) regarding the party's respective Motions to Compel, including regarding Coalview's February 26, 2019 discovery responses and related meet and confer conferences and correspondence. *See*, D.E. 83 and 97. Notably, nowhere in either of Ms. Bigelow's Declarations or in the accompanying briefing on the motions to compel did TCM take issue with or disavow the Production Schedule Agreement. Instead, TCM was the first to file of record the Production Schedule Agreement with the Court.

Yet, despite honoring for months, and even filing with the Court, the Production Schedule Agreement, TCM now claims in its Second Motion to Compel that counsel "never would have made such an agreement. And had Mr. Silverman included such an agreement in a confirming letter (which he did not), I would have objected." D.E. 147 (Declaration of Miles Yanick), ¶5. However, counsel's speculation about to what he "would have" agreed is belied by Mr. Yanick's own email in which he confirms the agreement, stating: "You objected to having

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

Coalview's documents due before TransAlta's, given that Coalview had served its requests earlier. *I agreed with that in principle*." D.E. 118-1 (Coalview's Opposition to TCM's Motion for Leave to Amend), Ex. 2 (April 4, 2019 email from Mr. Yanick) (emphasis added). Apparently trying to be relieved of his agreement, Mr. Yanick then states he did not anticipate "the relative timing of the multiple, rolling, and voluminous productions that are now underway, and which we could not then even plan." D.E. 118-1, Ex. 2. TCM's belated and improper attempt to wiggle out of the Production Schedule Agreement is completely disingenuous, as it was then – and remains; TCM cannot rely on its own delayed "multiple, rolling, and voluminous productions" as an excuse to disavow the Production Schedule Agreement. TCM was perfectly content to make this agreement when it believed its production would be soon completed; the fact that it has been delayed by its own conduct does not detract from its agreement or make it any less binding then it was when made. Accordingly, this email and TCM's Second Motion to Compel make it evidently clear that TCM is improperly attempting to evade the Production Schedule Agreement because TCM's own delay in production has apparently made the agreement no longer convenient for TCM – not too dissimilar from TCM's own view on the MSA. *See supra.*

Now, TCM apparently seeks to renege on the Production Schedule Agreement because of TCM's own delay in completing production of documents responsive to Coalview's discovery was not "planned." Indeed, as set forth in detail in Coalview's pending Motion to Compel, TCM has time and time again promised that its production of documents would be completed by a long-since-passed date certain, but has consistently retreated from, and rebuffed, each and every promised production schedule. D.E. 143 (Coalview's Motion to

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

Compel) at 2-5 (outlining TCM's several failures to comply with promised production schedules). In fact, TCM originally stated that its production would be *completed* over *four months ago,* by March 8, 2019. D.E. 143 at 5 and D.E. 94 (Declaration of Steve Silverman), ¶13; *see also* D.E. 111 (Objection to R&R) at 11, n.5 (further outlining TCM's several failures to comply with promised production schedules and retreatment from production schedule represented to Special Master); D.E. 118 at 8 (same).

Because TCM remains far from completing its production it apparently no longer wishes to honor the Production Schedule Agreement. Tellingly, despite Coalview having unequivocally stated on February 26, 2019 its position in its discovery responses regarding the Production Schedule Agreement, and repeatedly in correspondence and conversations with TCM's counsel thereafter, TCM waited ***over four months*** to now file the Second Motion to Compel, requesting to rescind the Production Schedule Agreement. But, had TCM stuck to its word and timely completed its production in March, it would have nothing to complain about now. TCM should not be permitted to re-trade on its own agreement because of its own delay and failure to comply with the rules of discovery.

Accordingly, Coalview respectfully requests that the Court hold TCM to its word with respect to the Production Schedule Agreement.

WHEREFORE, Coalview respectfully requests that the Court deny the Motion to Compel, award Coalview its fees and expenses pursuant to Fed. R. Civ. P. 26(c)(2), and grant Coalview such other and further relief as this Court deems just and appropriate.

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464 3939*

DATED this 8th day of July 2019.

KLUGER, KAPLAN, SILVERMAN,
KATZEN & LEVINE, P.L.

By  *s/Steve I. Silverman*
Steve I. Silverman, Fla. Bar No. 516831
Philippe Lieberman, Fla. Bar No. 27146
Miami Center, 27th Floor
201 South Biscayne Boulevard
Miami, FL  33131
Telephone:  (305) 379-9000
Fax:  (305) 379-3428
Email:  ssilverman@klugerkaplan.com
Email:  plieberman@klugerkaplan.com
*Attorneys for Plaintiff*
*(Admitted Pro Hac Vice)*

GARVEY SCHUBERT BARER, P.C.

By  *s/David R. West*
David R. West, WSBA #13680
By  *s/Daniel J. Vecchio*
Daniel J. Vecchio, WSBA #44632
1191 Second Avenue, 18th Floor
Seattle, WA  98101
Telephone: (206) 464-3939
Fax: (206) 464-0125
Email:  drwest@gsblaw.com
Email:  dvecchio@gsblaw.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2019, I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system which will send notification of this filing to all parties registered to receive such notice.

*s/ Steve I. Silverman*
Steve I. Silverman

[PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL DISCOVERY RESPONSES] - 13

GARVEY SCHUBERT BARER, P.C.
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*