The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

COALVIEW CENTRALIA, LLC, a Delaware
limited liability company,

      Plaintiff,

      v.

TRANSALTA CENTRALIA MINING LLC, a
Washington limited liability company, and
TRANSALTA CORPORATION, a Canadian
corporation,

      Defendants.

NO.    3:18-CV-05639-RBL

**DECLARATION OF LORRAINE
BARRICK IN SUPPORT OF
TRANSALTA CENTRALIA MINING,
LLC'S MOTION FOR PARTIAL
SUMMARY JUDGMENT
REGARDING TERMINATION**

NOTE ON MOTION CALENDAR:
FRIDAY, SEPTEMBER 30, 2019

ORAL ARGUMENT REQUESTED

**FILED UNDER SEAL**

DECLARATION OF LORRAINE BARRICK IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
No. 3:18-CV-05639-RBL

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

I, Lorraine Barrick, declare as follows:

1.      I am a Certified Public Accountant, accredited in forensic accounting and business valuation with over 30 years of experience in accounting and financial analysis.  My curriculum vitae is attached to this declaration as **Exhibit A**.  I have been retained by TransAlta Centralia Mining, LLC ("TCM") as an expert witness in this matter and make this declaration based on personal knowledge.

2.      Attached hereto as **Exhibit B** is a list of cases in which I have testified as an expert witness at trial or by deposition in the previous four years.

3.      I have not authored any publications in the previous ten years.

4.      Attached hereto as **Exhibit C** is a list of the documents or data considered in forming the opinions stated in this declaration.

## I.      Summary of Opinions and Background

5.      Article 11.02(c) of the Master Services Agreement ("MSA"), states that it is an event of default if either party "otherwise becomes bankrupt or insolvent, or (iv) is unable to pay its debts as they fall due or, if able, fails to do so."  The aforementioned provision states several independent ways in which default can occur, and I have been asked to determine whether any of these events have happened.  Specifically, I have been asked to opine on whether: (1) Coalview has failed to pay its debts as they fall due; (2) Coalview was unable to pay its debts as they fall due; or (3) Coalview became "bankrupt or insolvent."

6.      I understand that "fails to pay debts" and "unable to pay debts" should be interpreted in accordance with their plain meaning—i.e. whether Coalview had actually failed to pay debts or experienced an inability to pay debts as they came due as of the date of default. I understand that, as used in the MSA, "insolvent" has the same meaning as "unable to pay debts as they fall due."[1]  Also, I understand that "bankrupt or insolvent" means either an

---

[1] Whether Coalview was unable to pay debts as they fell due requires historical analysis of Coalview's actual financials.  There is no need to hypothesize about Coalview's ability to pay debts in the future.

DECLARATION OF LORRAINE BARRICK IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 1
No. 3:18-CV-05639-RBL

1   inability to pay debts as they fall due (addressed herein) or balance-sheet insolvency (addressed

2   in my declaration in opposition to Coalview's Second Motion for Preliminary Injunction).

3         7.     Regarding both nonpayment of debts and inability to pay debts, Coalview's

4   actual financial records are the most reliable data.  I have reviewed Coalview's financial

5   records, and they clearly establish that ████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████, there is

8   no reason to make projections about whether Coalview might have failed or been unable to pay

9   debts in the future based on speculation about its future revenues or performance.

10         8.     TransAlta provided notice of default based on Article 11.02(c) of the MSA on

11   March 29, 2019, and I have assumed that is the relevant date for purposes of determining

12   whether Coalview had experienced a failure or inability to pay debts.  ████████████████

13   ████████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████

16   ████  Accordingly, it is clear that Coalview's failure and inability to pay debts was not caused

17   by the dredge's sinking or any subsequent events.  Nor was Coalview's failure or inability to

18   pay debts caused by delayed payment by TransAlta to Coalview on its invoices, ████████████

19   ████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ██████████

24

25

26

27

DECLARATION OF LORRAINE BARRICK IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 2
No. 3:18-CV-05639-RBL

Savitt Bruce & Willey llp
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

II.  ████████████████████████

9.      According to Coalview's audited income statements for 2014 through 2017[2],

and an internally prepared income statement for 2018[3], Coalview's net income was consistently

negative in all five consecutive years, as follows[4]:

| | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|
| Revenues | $404,123 | $7,864,620 | $10,436,894 | $10,990,473 | $8,901,413 |
| SG&A | ($1,951,148) | ($8,892,075) | ($9,259,344) | ($8,600,318) | ($9,396,975) |
| Income/(Loss) from Continuing Operations | ($1,547,025) | ($1,027,455) | $1,177,550 | $2,390,155 | ($495,562) |
| | | | | | |
| Other Income/(Expenses) | | | | | |
|   Interest Income/(Expense) | ($208,232) | ($2,638,344) | ($2,302,552) | ($2,584,127) | ($1,882,157) |
|   Other Income/(Expense) | $46,909 | $4,850 | $5,701 | $9,545 | ($163,541) |
| Total Other Income/(Expenses) | ($161,323) | ($2,633,494) | ($2,296,851) | ($2,574,582) | ($2,045,698) |
| | | | | | |
| Net Income/(Loss) | ($1,708,348) | ($3,660,949) | ($1,119,301) | ($184,427) | ($2,541,260) |

10.     According to Coalview's audited balance sheets for 2014 through 2017, and an

internally prepared balance sheet for 2018, the members' deficit had grown over time as

Coalview repeatedly missed its revenue projections and continued to experience losses:

---

[2] Coalview's audited income statements for 2014 through 2017 are attached hereto as **Exhibit D**.

[3] Coalview has not produced an audited financial statement for 2018.  Attached hereto as **Exhibit E** is a copy of Coalview's internally prepared income statement for 2018.

[4] I note that, while the 2015 audited financial statements indicate revenues of $11,293,901 and a lower net loss, the 2016 audited financial statements, at Note 2, indicate that the company identified a billing error due to the meter reading inaccurate measurements in 2015, which resulted in an overbilling of $3.4 million and required restating 2015 results.

DECLARATION OF LORRAINE BARRICK IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 3
No. 3:18-CV-05639-RBL

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

| | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|
| **ASSETS** | | | | | |
| Current Assets | | | | | |
|    Cash | $405,768 | $494,609 | $244,941 | $281,232 | $70,319 |
|    Restricted Cash | $6,083,579 | $5,011,507 | $1,243,627 | $2,652,576 | $1,848,755 |
|    Accounts Receivable, net | $404,123 | $0 | $947,017 | $1,095,252 | $2,671,539 |
| Total Current Assets | $6,893,470 | $5,506,116 | $2,435,585 | $4,029,060 | $4,590,613 |
| | | | | | |
| Property, Plant, & Equipment, net | $20,214,218 | $19,454,589 | $17,988,703 | $15,697,978 | $13,457,935 |
| Debt Issuance Costs, net | $3,787,230 | $3,404,799 | | $0 | $0 |
| Other Assets | $0 | $0 | $80,627 | $80,627 | $0 |
| | | | | | |
| Total Assets | $30,894,918 | $28,365,504 | $20,504,915 | $19,807,665 | $18,048,548 |
| | | | | | |
| **LIABILITIES & MEMBERS' EQUITY** | | | | | |
| Total Current Liabilities | $3,657,215 | $7,154,482 | $4,767,949 | $5,178,863 | $6,283,984 |
| | | | | | |
| Total Liabilitites | $29,608,266 | $30,739,801 | $23,998,513 | $23,485,690 | $24,709,387 |
| | | | | | |
| Commitments and Contingencies | | | | | |
|    Members' Capital/(Deficit) | $1,286,652 | ($2,374,297) | ($3,493,598) | ($3,678,025) | ($6,660,838) |
| | | | | | |
| TOTAL LIABILITIES & MEMBERS' EQUITY | $30,894,918 | $28,365,504 | $20,504,915 | $19,807,665 | $18,048,549 |

11.     These deficits are not attributable to TransAlta's withholding of $1.5 million starting in July of 2018[5] or to Coalview's December 28, 2018 dredge-sinking, because most of the losses occurred well before these late-2018 events.

12.     According to Coalview's audited financial statements for the years 2014 through 2017, cash flows from operating activities were also negative for every year except 2017.

[5] Although this would have created an adverse timing difference in Coalview's cashflows which has since been reversed by Transalta's payment of the required amount.

DECLARATION OF LORRAINE BARRICK IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT - 4
No. 3:18-CV-05639-RBL

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

| CASH FLOWS FROM OPERATING ACTIVITIES | | | | | |
|---|---|---|---|---|---|
| Net Income/(Loss) | (1,708,348) | (3,660,949) | (1,119,301) | (184,427) | (6,673,025) |
| Adjustments to reconcile net income(loss) to net cash used in operating activities | | | | | |
| Depreciation, Amortization, and Accretion | 387,833 | 2,741,060 | 2,770,840 | 2,786,730 | 8,686,463 |
| | | | | | |
| Changes in Operating Assets & Liabilities | | | | | |
| Restricted Cash | (199,164) | (167,604) | 918,277 | 0 | |
| Accounts Receivable | (404,123) | 67,754 | (947,017) | (148,235) | (1,431,621) |
| Accounts Payable | 952,813 | (883,364) | 174,561 | (99,568) | 144,442 |
| Accrued Expenses | 958,318 | (875,508) | (2,271,240) | (5,676) | (2,194,106) |
| Total Adjustments | 1,307,844 | (1,858,722) | (2,125,419) | (253,479) | (3,481,285) |
| | | | | | |
| NET CASH FROM OPERATING ACTIVITIES | (12,671) | (2,778,611) | (473,880) | 2,348,824 | (916,338) |

13.     Even for 2017, it appears the positive cash flow is due in part, if not completely, to the fact that Coalview stopped replenishing the restricted cash reserve fund as required by its bondholders, as well as its failure to make the February 1, 2017 bond payment.  In other words, Coalview showed positive cash flow only because it had defaulted on its obligations to the bondholders.

14.     Finally, liquidity analyses reveal that, except for 2014 (which was the year in which Coalview received the bond funds), Coalview's working capital was consistently negative, meaning that its current assets were less than its current liabilities.  By 2015, Coalview's current ratio, quick ratio, and cash ratio were all below one (1), which are all indications of an inability to pay obligations as they become due.[6]

15.     All of the above factors (decreasing revenues, continuing losses, negative working capital, and negative cashflow) point toward an inability to pay debt.  And in fact, there was a long period of time during which Coalview's liquid assets were less than its

---

[6] The current ratio is total current assets divided by total liabilities.  A number greater than 1 indicates there are more current assets than there are current liabilities.  Given that current assets are assets that are cash or can be converted to cash within 90 days, and current liabilities are amounts that are due within 90 days, a number less than one indicates that a company may not be able to pay all amounts due in the next 90 days.  The quick ratio is similar, but more restrictive, as it includes only current assets that can quickly be turned into cash but still includes all current liabilities.  Current assets that can quickly be turned into cash exclude inventory and prepaid expenses.  Finally, the cash ratio is the most conservative, including only cash and marketable securities in the numerator and current liabilities in the denominator—i.e., it excludes accounts receivable from the numerator.

DECLARATION OF LORRAINE BARRICK IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 5
No. 3:18-CV-05639-RBL

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

1  current liabilities, meaning that Coalview was unable to pay its debts as they came due from

2  liquid reserves.

3       16.       ████████████████████████████████████████████████

4  ██████████████████████████████████████████████████████████████

5  ██████████████████████████████████████████████████████████████

6  ███████████████████████████████████[7]  ████████████████

7  █████████████████████████████████████████████

8       17.       In reaching his conclusions about Coalview's ability to pay, Coalview's expert,

9  Mr. Garrett Wilson, has relied on a model he built of future cash flows based on his projections

10  of Coalview's revenue and expenses in the future.  Mr. Wilson assumes that, because he

11  projects a profit for the future period from 2019 through 2025, Coalview was projected as of

12  December 31, 2018 to be able to pay its debts when they came due as of March 29, 2019.  This

13  approach fails to address whether Coalview was actually able to pay its debts as they fell due as

14  of the date of notice of default for at least the following reasons:

15            a.       Regardless of whether Coalview may someday be able to pay its debts as

16  they fall due, ████████████████████████████████████████████████

17            b.       Mr. Wilson failed to consider all of Coalview's debts that are already in

18  arrears and now due.  Given future debt service requirements, even in his unrealistically

19  optimistic forecast, it would be years before cash flow would be sufficient to pay Coalview's

20  now existing past-due debts, ██████████████████████████

21            c.       Mr. Wilson's projections of future revenues ignore data regarding actual

22  historical performance, including Coalview's history of consistently falling far short of

23  management projections.[8]  My analysis indicates that Mr. Wilson's 2019 projected revenue is

24  _____

25  [7] There is no financial basis to opine that it would have been substantially different on December 28, 2018 before
the dredge sank.

26  [8] See Year-to-Date Total Revenue vs. Budget YTD Revenue, as shown on the CVC Statements of Profit/Loss for
each of the Fiscal Quarters Ending December 31, 2015, 2016, 2017 and 2018.  See also Coalview's presentation to
a telephonic conference with bondholders dated November 21, 2017 (attach hereto as **Exhibit I**,

27  COALVIEW_000596-COALVIEW_000607)████████████████████████████

DECLARATION OF LORRAINE BARRICK IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 6
No. 3:18-CV-05639-RBL

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

46% higher than the prior four-year average revenue and 56% higher than the 2018 revenue. Further, Mr. Wilson's operating income is 92% higher than the 2017 operating income.[9]  In short, Mr. Wilson's opinions assume that, if Coalview had continued operating in 2019, it would immediately begin performing far better than it ever had in the past.  Below is a graph depicting Coalview's actual revenues versus the revenues projected by Mr. Wilson:



Mr. Wilson has not referenced any basis for making this assumption or relying on the unreasonable projections reflecting that assumption.

**III.** ████████████████████████████████

18. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██[10]

19. ████████████████████████████████████████

████████████████████████████████████████████████

---

[9] 2016 and 2017 were the only two years in which the company had positive operating income.

[10] Coalview produced copies of its Unpaid Bills Detail and they are attached hereto as **Exhibit F.** *See* COALVIEW_000007.

DECLARATION OF LORRAINE BARRICK IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 7
No. 3:18-CV-05639-RBL

1 ████████████████████████████████████████████████████████

2 ███████████████████████████████████[12]  Note that, in the excerpt below,

3 positive amounts show when the payment is due and negative amounts indicate payments

4 made.

5
6
7
8
9
10
11
12
13
14

████████████████████████████████████████████████████████

15       20.       Coalview itself admits that it has failed to pay its debts when due.  As part of its

16 audited financial statements for 2017, Coalview's President and CEO, Roger Fish, provided a

17 Certificate for Annual Filing of Certain Financial and Operating Covenants[13] that states, among

18 other things (emphasis added):

19                   1.       The undersigned below is familiar with the provisions of
20              the Loan Agreement and based on such review and familiarity, the
               Company has fulfilled all of its obligations thereunder throughout
21              the Fiscal Year preceding the date hereof, and there have been no
               Defaults of Events of Default under the Loan Agreement *other*
22              *than the following*:

23

24

_____

25 [11] Coalview produced copies of its Vendor Balance Details and they are attached hereto as **Exhibit F**.  *See*
   COALVIEW_000028 attached to Exhibit F.

26 [12] Coalview used accrual basis accounting, therefore the $1.5 million would have been booked into revenue, and
   the receivable created.  Therefore, the only impact of any delayed payments would have been on Coalview's cash
27 flows, not its profit and loss statement or its balance sheet.

[13] *See* Exhibit D.

DECLARATION OF LORRAINE BARRICK IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 8
No. 3:18-CV-05639-RBL

**SAVITT BRUCE & WILLEY** LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

a.      Coalview Centralia, LLC *failed to pay the principal and interest for the bond payment scheduled for February 1, 2017* Section 9.1(c) of the Indenture, although there was sufficient funds in the Bond Fund as of December 31, 2017 to make the payment.

b.      Coalview Centralia, LLC has *failed to replenish the deficiency in the Debt Service Reserve Fund* in accordance with Article IV of the Indenture.

c.      Coalview *has entered into a Forbearance Agreement* with the Trustee, dated January 1, 2018 granting Coalview forbearance from the above events of default as they are being cured in coordination with the Bondholders and the Trustee.

21.     According to the Forbearance Agreement between Coalview and U.S. Bank National Association, as trustee under Indenture of Trust, draft dated July 20, 2017,[14] in addition to failing to make the February 1, 2017 bond payment, Coalview also failed to replenish the balances of the Debt Service Reserve Fund, the Operating Reserve Fund, and the Repair and Replacement Fund.  Coalview also failed to maintain a Debt Service Coverage Ratio of at least 1.0x as of June 30, 2017.

22.     But rather than curing the events of default, Coalview continued to be in violation of its debt covenants even after the 2017 forbearance agreement.  For example:

---

[14] A forbearance agreement is entered into between a lender and borrower when the borrower defaults on its debt. I understand that Coalview refuses to produce the final, signed Forbearance Agreement, even though it shows Coalview's failure to pay debts from January 1, 2018 to the present.  Instead, I have relied on a draft of the Forbearance Agreement obtained from WEDFA, which is attached hereto as **Exhibit G**.

DECLARATION OF LORRAINE BARRICK IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 9
No. 3:18-CV-05639-RBL

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

| | 2018 | | | |
|---|---|---|---|---|
| | Q1 | Q2 | Q3 | Q4 |
| Debt Service Coverage Ratio Actual | 1.66 | 1.64 | 0.99 | 0.41 |
| Debt Service Coverage Ratio Required | 1.15 | 1.15 | 1.15 | 1.15 |
| *Variance* | *$0.51* | *$0.49* | *($0.16)* | *($0.74)* |
| | | | | |
| Debt Service Reserve Fund Actual | $141,407.67 | $150,000.00 | $2,190,918.33 | $1,297,159.71 |
| Debt Service Reserve Fund Required | $2,571,718.00 | $2,571,718.00 | $2,571,718.00 | $2,571,718.00 |
| *Variance* | *($2,430,310.33)* | *($2,421,718.00)* | *($380,799.67)* | *($1,274,558.29)* |
| | | | | |
| Operating Reserve Fund Actual | $600,000.00 | $559,180.76 | $0.00 | $0.04 |
| Operating Reserve Fund Required | $750,000.00 | $750,000.00 | $750,000.00 | $750,000.00 |
| *Variance* | *($150,000.00)* | *($190,819.24)* | *($750,000.00)* | *($749,999.96)* |
| | | | | |
| Repair and Replacement Fund Actual | $59,854.34 | $260,299.07 | $1.36 | $1.36 |
| Repair and Replacement Fund Required | $500,000.00 | $500,000.00 | $500,000.00 | $500,000.00 |
| *Variance* | *($440,145.66)* | *($239,700.93)* | *($499,998.64)* | *($499,998.64)* |

23.     According to the Limited Offering Memorandum, Coalview was not in compliance with any of the reserve funds during 2018, and it was not in compliance with the Debt Service Coverage Ratio for the third and fourth quarters of 2018.[15]  I note that the variances for the third and fourth quarter may have been impacted by Transalta's failure to pay. However, I also note that the $1.5 million temporarily withheld by TransAlta until February 2019 would not have been sufficient to bring all of these funds to their required levels.

24.     In addition to its failure to pay or honor its financial obligations to the bondholders, Coalview's own financial statements show that it has failed to pay the following debts:

a.     ████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████
████████████████████

b.     █████████████████████████████████████

---

[15] Attached hereto as **Exhibit H** is a copy of the calculations I have made to reach these conclusions.

DECLARATION OF LORRAINE BARRICK IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 10
No. 3:18-CV-05639-RBL

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington 98101-2272
(206) 749-0500

1 

2 ████████████████████████████

3 ███████████

4         c. ████████████████████████

5 ██████████████████████████

6 █████████████████

7 These figures are taken from documents produced by Coalview.[16]

8        25.    I also note that, ████████████████████

9 ██████████████████████████████

10 ███████████████████████████████████

11 ██████████████████████████████

12 ███████████████████████████████████

13 ████████████████████████████████████

14 ████████████████████████████████

15        26.    The declaration of Coalview's expert, Mr. Wilson (ECF No. 165 at ¶ 35), opines

16 that, but for TransAlta's withholding of $1.5 million and the dredge sinking and subsequent

17 shut-down, Coalview would have been able to pay its debts as they fell due:

> I reviewed the expected future cash flows derived in my discounted cash flows and compared them to the agreed upon principal repayment schedule. I noted that in every period Coalview was expected to have more free cash flow than the interest and principal payments required. Specifically, Coalview was only required to repay between $1.7 million to $2.9 million per year, an amount the firm was likely to have achieved. As a result, the cash flow test also indicated that Coalview was solvent on and around December 31, 2018, and was projected to continue to be solvent, but for force majeure.

---

[16] *See* Exhibit F (COALVIEW_000007–000028.)

[17] *See id.*

DECLARATION OF LORRAINE BARRICK IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 11
No. 3:18-CV-05639-RBL

1   Mr. Wilson's conclusions are flawed because █████████████████████

2   ████████████████████████████████████████████████████

3   ████████████████████████████████████████

4          I declare under penalty of perjury under the laws of the United States that the foregoing

5   is true and correct.

6          DATED this 26th day of August, 2019 at Seattle, Washington.

7

8

9                                              Lorraine Barrick

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DECLARATION OF LORRAINE BARRICK IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT - 12
No. 3:18-CV-05639-RBL

1

## <u>CERTIFICATE OF SERVICE</u>

2      I certify that a copy of the foregoing document was filed electronically with the Court

3  and thus served simultaneously upon all counsel of record, this 26th day of August, 2019.

4

5                                                        _____

6                                                        Rondi A. Greer

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27