# EXHIBIT G

ML Draft July 20, 2017

# FORBEARANCE AGREEMENT

This Forbearance Agreement (this "Forbearance Agreement") dated as of this 1st day of June, 2017 is by and between Coalview Centralia, LLC (the "Borrower") and U.S. Bank National Association, in its capacity as trustee (the "Trustee") under Indenture of Trust dated as of December 1, 2013 (the "Indenture") between the Washington Economic Development Finance Authority (the "Issuer") and the Trustee. Capitalized terms used and not defined in this document have the meanings given such terms in the Indenture.  This Forbearance Agreement shall be effective during the Forbearance Period (as defined in Section V below).

RECITALS

A. At the request of the Borrower, the Issuer issued its $26,500,000 Washington Economic Development Finance Authority Environmental Facilities Revenue Bonds, 2013 (Coalview Centralia, LLC Project) (the "Bonds") pursuant to the Indenture.

B. Pursuant to the Loan Agreement dated as of December 1, 2013 (the "Loan Agreement") between the Borrower and the Issuer, the Issuer loaned the proceeds of the Bonds to the Borrower for the purpose of acquiring, constructing and equipping a coal slurry processing facility (the "Project") and Borrower will pay amounts sufficient to pay, when due, the principal and redemption price of, and interest on, the Bonds.

C. The rights of the Issuer under the Loan Agreement were assigned to the Trustee pursuant to the Indenture as security for the Bonds.  In addition, the Borrower granted the Trustee a security interest in substantially all of its assets pursuant to a Pledge and Security Agreement dated as of December 1, 2013 (the "Pledge and Security Agreement") and a leasehold mortgage on the Project pursuant to a Construction Leasehold Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixtures dated as of December 1, 2013 (the "Mortgage" and all such collateral so granted under the Bond Documents, the "Collateral").

D. The Indenture, the Loan Agreement, the Pledge and Security Agreement, the Mortgage, and any other document or agreement delivered as security for, or in respect to, the Bonds or the Borrower's obligations under any of such documents are collectively referred to herein as the "Bond Documents."

E. Potential Defaults or Events of Default have occurred (or will occur) under the Bond Documents as a result of the failure by the Borrower to (i) make payments pursuant to Section 4.01 of the Loan Agreement, (ii) replenish the balances of the Debt Service Reserve Fund, the Operating Reserve Fund and the Repair and Replacement Fund, and (iii) to maintain a Debt Service Coverage Ratio of at least 1.0x as of June 30, 2017 (collectively, the "Specified Defaults").

F. The Borrower has requested that the Trustee forbear from exercising remedies available under the Bond Documents as a result of the Specified Defaults.

In reliance upon the truth of the foregoing recitals, and of the promises, conditions and covenants herein contained, the Trustee, at the direction of the beneficial owners of 100% in aggregate principal amount of the Bonds Outstanding (the "Directing Bondholders" and together

ML Draft July 20, 2017

with the Trustee, the "Creditor Parties"), agree to grant the requested forbearance subject to and upon the conditions set forth herein.

NOW THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto do hereby agree as follows:

I.    ACKNOWLEDGEMENTS.

(a)    Affirmation of Recitals.  The Borrower hereby confirms, represents and warrants to the Creditor Parties that the Recitals set forth at the beginning of this Forbearance Agreement are true and accurate in all respects, and the Borrower acknowledges that the Creditor Parties are relying upon such truth and accuracy in entering into this Forbearance Agreement.

(b)    Agreement of Trustee Pursuant to Trustee Direction.  All references in this Forbearance Agreement to the Trustee's agreeing with or agreement to, consenting to or consent to, acknowledging or acknowledgement of, or any like action by the Trustee, shall refer to such entity having been directed so to agree, consent, acknowledge or take like action pursuant a direction from the Directing Bondholders.

(c)    Acknowledgements Respecting Status and Representations.  The Borrower hereby acknowledges and represents to the Creditor Parties, upon which representations the Creditor Parties have relied in entering into this Forbearance Agreement and the Directing Bondholders have relied in directing the Trustee to enter into this Forbearance Agreement, that: (i) the Bond Documents to which the Borrower is a party constitute the valid and binding obligations of the Borrower; (ii) the outstanding principal amount owed on Bonds is $23,090,000; (iii) to the best of the Borrower's knowledge, all of the real and personal property owned by the Borrower's is subject to the Mortgage or Pledge and Security Agreement and the Trustee holds a valid, perfected, first priority lien on all of the Collateral, subject to Permitted Exceptions (as defined in the Leasehold Mortgage); (iv) all representations and warranties of the Borrower in this Forbearance Agreement are true and correct as of the date hereof, and shall survive the execution of this Forbearance Agreement; (v) the Borrower is authorized to enter into this Forbearance Agreement; and (vi) upon execution and delivery hereof, this Forbearance Agreement will be a legal and binding obligation of the Borrower.

(d)    No Waiver.  The Borrower hereby acknowledges that nothing in this Forbearance Agreement is intended to serve as a waiver of any payment or other obligation of the Borrower under any of the Bond Documents, and each of such obligations shall continue in full force and effect, subject to the terms and conditions of this Forbearance Agreement as more specifically set forth herein.  The Borrower hereby acknowledges that the Creditor Parties reserve all of their respective rights to take action with respect to the Specified Defaults and any other defaults, Potential Defaults and Events of Default now or hereafter existing under the Bond Documents, including, without limitation, the Specified Defaults, upon the occurrence of a Forbearance Termination Event (as defined in Section V below).  The parties acknowledge that, subject to the terms of this Forbearance Agreement and the Creditor Parties' agreement to forbear as more particularly set forth herein, all terms of the Bond Documents remain in full force and effect.

ML Draft July 20, 2017

(e)     Specified Defaults.  The Borrower represents and warrants that as of the date hereof there is no other default or Event of Default, or any event which, with notice or lapse of time or both, would constitute a default or an Event of Default under any of the Bond Documents, other than the Specified Defaults.

(f)     Ratification of Security Interest.  The Borrower hereby ratifies and confirms its grant of a first priority security interest in the Collateral, subject to Permitted Exceptions, in favor of the Creditor Parties to secure the Bonds and amounts owing under the Bond Documents. The Borrower hereby warrants that, to its knowledge, there are no other liens existing as of the date hereof with respect to the Collateral other than Permitted Exceptions.

II.     COVENANTS AND AGREEMENTS OF THE BORROWER.

To further induce the Creditor Parties to enter into this Forbearance Agreement and to forbear, as and to the extent provided in this Forbearance Agreement, the Borrower further covenants and agrees, and represents and warrants to the Creditor Parties as follows:

(a)     Fees and Expenses.  The Borrower shall pay all fees and expenses of the Creditor Parties (including, but not limited to, reasonable fees and expenses of its attorneys) in connection with the negotiation, execution and enforcement of this Forbearance Agreement and any foregoing fees and expenses upon presentment thereof on a current basis in accordance with the provisions for payment of fees and expenses of the Trustee as set forth in the Bond Documents; provided, however, that nothing herein modifies, alters or amends the Trustee's respective rights under the Bond Documents to receive payment of its fees and expenses from the Trust Estate.

(b)     Operations.  Attached hereto as Exhibit A is a weekly budget through December 31, 2017 (the "Budget") prepared by the Borrower, which Budget sets forth a good faith projection of all cash receipts and disbursements relating to the Project during the period.  The Borrower shall use Gross Revenues and other available funds to pay only those budgeted expenses in the amounts, time and categories set forth in the Budget; provided that any amounts not expended by the Borrower in accordance with the Budget for a particular expenditure in any week may be expended for such purpose into future weeks.  No later than October 31, 2017, the Borrower shall provide the Creditor Parties with a budget for the next calendar year. The Borrower hereby covenants and agrees that during the Forbearance Period it shall operate and achieve in good faith the results in accordance with Budget.

(c)     Cooperation with Directing Bondholders.  If requested by the Directing Bondholders, the Borrower shall hire a financial advisor acceptable to the Directing Bondholders on terms acceptable to the Directing Bondholders, to assist in the preparation and review of financial reports, projections and materials through the Forbearance Period.

(d)     Debt Service Coverage Ratio.  For the Twelve-Month Periods ending December 30, 2017, the Borrower shall maintain a Debt Service Coverage Ratio of not less than 1.0x.

(e)     Trades Payable.  The Borrower will not as of the end of any Fiscal Quarter permit (i) ninety (90) percent or more of its accounts payable to age more than 60 days and (ii) the remaining ten (10) percent of its accounts payable to age more than 90 days; provided amounts due to TA Mining for royalties, Gables Energy, Coalview Recovery Group and IFB shall be not

be counted for this purpose.  If the Borrower fails to meet the Trade Payable Covenant in any Fiscal Quarter, such failure shall, only if so directed by the Majority Holders, constitute a Forbearance Termination Event.

(f) Reporting and Conference Calls.

(1) Beginning on June 15, 2017 and on the like day each month thereafter during the Forbearance Period, the Borrower shall deliver to the Directing Bondholders, and shall post on EMMA, a written report including actual revenues and expenditures, comparison to Budget, balance sheet and volume reports on slurry and coal.

(2) On June 20, 2017, July 20, 2017, August 20, 2017 and October 20, 2017, representatives of the Borrower and its advisors will host a conference call with the Creditor Parties to discuss the financials, operations and management of the Project.

(3) The Borrower shall notify the Creditor Parties immediately of any notices of default from any other counterparty.

(4) The Borrower shall provide the Creditor Parties, upon request, all other financial and other information related to the Borrower, within five (5) Business Days of such request.

(g) Annual Audit.  Notwithstanding the Loan Agreement requirements, the Borrower and Creditor Parties agree that the annual audited financial statements for the year ending December 31, 2016 shall be delivered by the Borrower no later than July 30, 2017.

(h) Bond Document Amendments.  The Borrower has agreed to amend the optional redemption provisions under the Indenture to restate the optional redemption of the Bonds as follows:

| Redemption Date | Redemption Price |
| --- | --- |
| August 1, 2022 through July 31, 2023 | 107.5% |
| August 1, 2023 through July 31, 2023 | 105.0% |
| August 1, 2024 and thereafter | 100.0% |

The Borrower shall deliver a draft of the amendments set forth above (the "Amendment") to Trustee no later than _____, 2017 and shall deliver the fully executed Amendment, together with a bond counsel opinion satisfactory to the Trustee that the execution and delivery of the Amendment and the Forbearance Agreement will not adversely affect the federal tax exemption of interest on the Bonds, no later than _____, 2017.

III. APPLICATION OF GROSS REVENUES; DEBT SERVICE.

(a) Application of Gross Revenues.  The Borrower shall deposit all Gross Revenues with the Trustee immediately upon receipt for deposit in the Revenue Fund.  The Borrower shall be permitted to maintain a $50,000 balance (the "Minimum Balance") in its operating account.  On every other Friday, commencing June 30, 2017 (the "Disbursement Date"), the Trustee shall

transfer amounts on deposit in the Revenue Fund, in the following manner, at the times and in the order of priority indicated, to the extent of funds available therefor:

 (1) To the Borrower, in an amount equal to 105% of the Operating Expenses (excluding TA Mining Royalties and amounts for Major Components) set forth in the Budget for the following two week period, net of the balance of the operating account (other than the Minimum Balance), as certified by the Borrower in a requisition delivered to the Trustee no later than the Wednesday prior to the Disbursement Date;

 (2) To the Bond Fund, in equal bi-weekly installments necessary to pay principal of and interest due on the Bonds on the next Interest Payment Date;

 (3) To the Operating Reserve Fund, to maintain the balance therein at $600,000;

 (4) To the Repair and Replacement Fund, in a monthly installment equal to $23,200 until the aggregate amount deposited therein is equal to $261,000;

 (5) To the Debt Service Reserve Fund, to maintain the balance therein at the Debt Service Reserve Fund Requirement;

 (6) To the Operating Reserve Fund, to maintain the balance therein at the Operating Reserve Fund Requirement;

 (7) To the Repair and Replacement Fund, to maintain the balance therein at the Repair and Replacement Fund Requirement;

 (8) To the holder of the Subordinate Note, until all the accrued and unpaid interest has been paid in full;

 (9) To TA Mining to pay any accrued and unpaid TA Mining Royalties; and

 (10) To the holder of the Subordinate Note, to pay principal on the Subordinate Note.

To the extent Gross Revenues during any Disbursement Date are insufficient to make the payments required by clauses (2) – (4), the Trustee shall during any future Disbursement Date, fund any such deficiency in the order of priority set forth above before making payments with respect to the next priority.

 (b) <u>Payment of Debt Service and other fees during Forbearance Period</u>.

 (1) During the Forbearance Period, the Borrower shall make the payments set forth in Section 4.01 of the Loan Agreement.

 (2) No later than December 31, 2017, the Borrower shall replenish the Debt Service Reserve Fund to the Debt Service Reserve Fund Requirement.

5

(3) On each Interest Payment Date during the Forbearance Period, the Trustee shall pay principal of and interest on the Bonds from (i) first, amounts on deposit in the applicable account of the Bond Fund and (ii) second, to the extent of any deficiency therein and if so directed by the Majority Holders, amounts on deposit in the Debt Service Reserve Fund. On any Interest Payment Date, the Majority Holders may direct the Trustee to apply amounts on deposit in the Debt Service Reserve Fund to pay the principal that was due on February 1, 2017 and remains unpaid.

(c) <u>Capital Improvements and Major Components</u>. The Borrower shall only incur such capital expenditures as set forth in the "Major Components" line item of the Budget. The Borrower shall submit a requisition to the Trustee for amounts necessary to pay for actual expenses incurred for major components and other capital or repair needs. Within five (5) Business Days of receipt of the requisition, the Trustee shall fund the amount requested if it is in compliance with the Budget from the Repair and Replacement Fund, and if amounts therein are insufficient, from the Operating Reserve Fund.

(d) <u>TA Mining Royalties</u>. The Borrower shall not pay any TA Mining Royalties other from funds available pursuant to Section III(a)(9) above.

(e) <u>Line of Credit</u>. The Borrower shall not incur any additional indebtedness, except for the Line of Credit in the amount of $709,000, which bears interest at LIBOR + 6.0% with an upfront fee of 0.75%. Such Line of Credit shall be subordinated to the Bonds and Subordinate Note and shall not be secured by any assets of the Borrower.

IV. <u>CONDITIONS TO EFFECTIVENESS OF FORBEARANCE AGREEMENT</u>.

This Forbearance Agreement shall not become effective (such date being defined as the "<u>Effective Date</u>") until receipt by the Creditor Parties of each of the following:

(a) a fully executed original of this Forbearance Agreement; and

(b) a copy of the Budget.

V. <u>FORBEARANCE TERMINATION EVENTS; REMEDIES</u>.

(a) <u>Forbearance Termination Events</u>. The period of this forbearance (the "<u>Forbearance Period</u>") shall commence on the Effective Date and shall continue until the earlier of (i) a Forbearance Termination Event; or (ii) December 31, 2017. A "<u>Forbearance Termination Event</u>" shall be the occurrence of any one of the following:

(1) The occurrence of any default or Event of Default, or any event which, with the passage of time or giving of notice or both, would constitute a default or Event of Default under any of the Bond Documents, other than the Specified Defaults, as determined by all of the Creditor Parties; or

(2) The filing of a bankruptcy or other insolvency proceeding by or against the Borrower; or

6

   (3) A violation by the Borrower of any of the covenants and obligations set forth herein; or

   (4) If any of the representations or warranties made hereunder by or on behalf of the Borrower (including the Recitals hereto) shall not have been true, accurate or complete in any material respect when made;

   (5) If the fully executed Amendment is not delivered by _____, 2017; or

   (6) If, in derogation of the acknowledgements given pursuant to Section I, the Borrower asserts the existence of any defense, set off, reduction, claim or counterclaim, whether at law or in equity, with respect to the indebtedness or other obligations evidenced and/or secured by this Forbearance Agreement or any of the Bond Documents.

  (b) <u>Remedies Upon Termination</u>.  Upon the occurrence of a Forbearance Termination Event, the forbearance granted under Section VI shall immediately and automatically terminate, and the Creditor Parties shall have available to them all rights and remedies specified under this Forbearance Agreement, any of the Bond Documents or under applicable law.

  VI. <u>AGREEMENT TO FORBEAR</u>.

  During the Forbearance Period, the Creditor Parties hereby agrees to forbear from exercising remedies under the Bond Documents arising by reason of the Specified Defaults.  The foregoing agreement by the Creditor Parties (i) is not intended by the parties and shall not be construed as a waiver of any existing and continuing defaults under the Bond Documents, it being acknowledged and agreed that no such waiver shall be effected hereby, and (ii) is only an agreement to forbear from directing the exercise of rights and remedies available under the Bond Documents as such rights relate to the Specified Defaults and is in no way intended to limit any rights or remedies the Creditor Parties may have with respect to any default or "Event of Default" (as such terms is defined in any Bond Documents) heretofore, now, or hereafter arising other than the Specified Defaults.  Upon the termination of the Forbearance Period, all forbearances, deferrals and indulgences granted by the Creditor Parties pursuant to this Forbearance Agreement shall automatically terminate, and the Creditor Parties shall thereupon have, and shall be entitled to exercise, any and all of their respective rights and remedies under the Bond Documents.

  The Borrower acknowledges that the aforesaid agreement by the Trustee is given at the request of the Borrower, and the Borrower s and warrants to and for the benefit of the Creditor Parties that such agreement shall not have the effect of releasing any person or entity from liability for repayment of the indebtedness or performance of the obligations evidenced and/or secured by the Indenture or any of the other Bond Documents.  The Borrower hereby waives all notices of default and rights to cure as provided in the Bond Documents or otherwise with respect to the Specified Defaults.  The Borrower also reaffirms the Trustee's right to payment of its fees and expenses as Trustee and to the lien securing the same, all as set forth in the Bond Documents.  The Borrower acknowledges and agrees that nothing in this Forbearance Agreement shall act in derogation of such right to payment or such lien.

    VII.    <u>WAIVER</u>.

For so long as no Forbearance Termination Event or default which with the passage of time will become a default exists has occurred, upon replenishment of the Debt Service Reserve Fund to the Debt Service Reserve Fund Requirement, the Operating Reserve Fund to the Operating Reserve Fund Requirement and the Repair and Replacement Fund to the Repair and Replacement Fund Requirement, and payment of all past due and current debt service due on the Bonds and the Subordinate Note, the Bondholders shall waive all Specified Defaults under the Bond Documents. Upon waiver of the Specified Defaults, Gross Revenues shall be deposited in the Revenue Fund and applied as set forth under Section 6.1 of the Indenture.

    VIII.    <u>VOLUNTARY ACTION</u>.

The Borrower hereby acknowledges and agrees that it (i) has read and understands the contents of this Forbearance Agreement, (ii) has had the opportunity to consult with counsel of its choice throughout all of the negotiations that preceded the execution of this Forbearance Agreement, and (iii) has acted voluntarily and without duress in connection with the execution and delivery of this Forbearance Agreement after reviewing and understanding each provision of this Forbearance Agreement and without reliance upon any promise or representation of any person or persons acting for or on behalf of the Creditor Parties.

    IX.    <u>RELEASE OF THE CREDITOR PARTIES</u>.

IN ORDER TO INDUCE THE CREDITOR PARTIES TO ENTER INTO THIS AGREEMENT, AND THE DIRECTING BONDHOLDERS TO DIRECT THE TRUSTEE, THE BORROWER FOREVER RELEASES AND DISCHARGES THE CREDITOR PARTIES AND THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS AND AGENTS (COLLECTIVELY, THE "<u>RELEASED PARTIES</u>") FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, SUITS AND DAMAGES (INCLUDING CLAIMS FOR ATTORNEYS' FEES AND COSTS) WHICH IT (INCLUDING JOINTLY OR SEVERALLY) EVER HAD OR MAY NOW HAVE AGAINST ANY OF THE RELEASED PARTIES FOR ANY CLAIMS ARISING OUT OF OR RELATED IN ANY WAY TO THE BOND DOCUMENTS OR THE ADMINISTRATION THEREOF, WHETHER KNOWN OR UNKNOWN, INCLUDING, BUT NOT LIMITED TO, ANY AND ALL CLAIMS BASED UPON OR RELYING ON ANY ALLEGATIONS OR ASSERTIONS OF DURESS, ILLEGALITY, UNCONSCIONABILITY, BAD FAITH, BREACH OF CONTRACT, REGULATORY VIOLATIONS, NEGLIGENCE, MISCONDUCT, OR ANY OTHER TORT, CONTRACT OR REGULATORY CLAIM OF ANY KIND OR NATURE. THIS RELEASE IS INTENDED TO BE FINAL AND IRREVOCABLE AND IS NOT SUBJECT TO THE SATISFACTION OF ANY CONDITIONS OF ANY KIND.

The provisions, waivers and releases set forth in this Section VIII are binding upon the Borrower and their respective trustees, directors, agents, employees, assigns and successors in interest. The provisions, waivers and releases of this Section VIII shall inure to the benefit of each member of the Released Parties.

The Borrower represents and warrants that it is the sole and lawful owner of all right, title and interest in and to all of the claims released hereby and it has not heretofore voluntarily, by operation of law or otherwise, assigned or transferred or purported to assign or transfer to any person any such claim or any portion thereof.  The Borrower indemnifies and holds harmless each member of the Released Parties from and against any claim, demand, damage, debt, liability (including payment of reasonable attorneys' fees and costs actually incurred whether or not litigation is commenced) based on or arising out of any assignment or transfer of any released claims made by the Borrower hereunder.

The provisions of this Section VIII shall survive payment in full of the amounts owed by the Borrower under the Bond Documents, full performance of all the terms of this Forbearance Agreement, and any exercise of remedial actions under the Bond Documents or otherwise.

X.      INDENTURE HELD FUNDS.

The Borrower hereby acknowledges and agrees that all amounts on deposit in the Bond Fund and the Debt Service Reserve Fund are held in trust by the Trustee for the benefit of the owners of the Bonds and the Borrower has no right, title or interest in such funds held in the Bond Fund and the Debt Service Reserve Fund.  The Borrower further hereby acknowledges and agrees that Bond Fund and the Debt Service Reserve Fund are not "property of the debtor's estate" under 11 U.S.C. § 541, are not protected by the automatic stay under 11 U.S.C. § 362, and are not "cash collateral" under 11 U.S.C. § 363.

XI.     FURTHER ASSURANCES.

The Borrower will take such other actions as the Creditor Parties may reasonably request from time to time to perfect or continue the Creditor Parties' security interests in the Collateral and to accomplish the objectives of this Forbearance Agreement and the Bond Documents.

XII.    MISCELLANEOUS.

(a)     Notices.  All notices, demands, requests and other communications required pursuant to the provisions of this Forbearance Agreement shall be given in accordance with the Indenture (as modified by any change of address notifications heretofore given by the parties).

(b)     No Modification or Waiver.  None of the terms or provisions of any of the Bond Documents or of this Forbearance Agreement may be changed, waived, modified, discharged or terminated except by a written instrument executed by the parties or party against whom or which enforcement of the change, waiver, modification, discharge or termination is asserted. None of the terms or provisions of the Bond Documents or this Forbearance Agreement shall be deemed to have been abrogated or waived by reason of any failure or failures to enforce the same.

(c)     Counterparts.  This Forbearance Agreement may be executed in any number of counterparts, each of which shall be considered an original for all purposes, provided, however, that all such counterparts shall together constitute one and the same instrument.  A pdf signature hereon shall be deemed an original for all purposes.

  (d) <u>Time is of the Essence</u>.  Time shall be of the essence with respect to each and every of the various undertakings and obligations set forth in this Forbearance Agreement.

  (e) <u>Successors and Assigns</u>.  The provisions of this Forbearance Agreement shall be binding upon, and shall inure to the benefit of, the respective successors and assigns of the Creditor Parties, and the respective heirs, legal representatives, successors and assigns of the Borrower; provided, however, nothing herein shall be intended as a consent to an assignment not specifically permitted by the Bond Documents.

  (f) <u>Entire Agreement</u>.  The various Bond Documents, as confirmed and affected by this Forbearance Agreement, constitute the entire agreement between the Creditor Parties, the Borrower and the other parties to the Bond Documents and this Forbearance Agreement relating to or connected with the Bonds.  Any other agreements or understandings related to or connected with the Bonds not expressly set forth in the Bond Documents, as confirmed or affected hereby, are null and void and superseded in their entirety.

  (g) <u>No Third-Party Beneficiaries</u>. This Forbearance Agreement shall be solely for the benefit of the parties to this Forbearance Agreement and the other Creditor Parties and no other person or entity shall be a third party beneficiary hereof.

  (h) <u>Applicable Law</u>.  This Forbearance Agreement is executed and delivered under seal and shall be construed in accordance with and governed by the laws of, the State of Washington without giving effect to the choice of laws principles thereof.

  (i) <u>Captions</u>.  The captions and headings in this Forbearance Agreement are for convenience only and in no way define or describe the scope or content of any provision of this Forbearance Agreement.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties have executed this Forbearance Agreement as a sealed instrument as of the date first above written.

COALVIEW CENTRALIA, LLC

_____
Name:
Title:

U.S. BANK NATIONAL ASSOCIATION, as Trustee

_____
Name:
Title:

11